UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GEORGE HORN,

    Plaintiff,

vs.                                        Case No.: 4:19-CV-127

MARK INCH, as Secretary of the Florida
Department of Corrections, CENTURION
of FLORIDA, a health services
corporation, and ALEXIS FIGUEROA,
M.D., in his individual capacity,

    Defendants.
_____/

## DEFENDANT MARK INCH'S AND FLORIDA DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS COMPLAINT FOR IMPROPER VENUE (FORUM NON CONVENIENS)

Defendant Mark Inch as Secretary of the Florida Department of Corrections (hereinafter "FDC"), by and through undersigned counsel, hereby moves this Honorable Court for the entry of an order dismissing Plaintiff's complaint [Doc. #1] pursuant to *forum non conveniens* pursuant to the terms of the General Release and Settlement Agreement attached as Exhibit 1 to Plaintiff's Complaint, and in support thereof, states as follows:

1

## I. GROUNDS FOR DISMISSAL

As shown below, the Complaint should be dismissed for the following reasons:

A. The parties, Plaintiff and FDC, are bound by the terms of a November 29, 2016 General Release of Liability and Settlement Agreement (hereinafter "Settlement Agreement") which is attached to the Plaintiff's complaint as Plaintiff's Exhibit 1, in which all parties agreed that all claims for breach of that agreement (which includes counts 1, 2 and 4 of Plaintiff's instant complaint) would be brought in the state court of Leon County, Florida.

B. As the settlement agreement covered all claims which Plaintiff had or which may accrue hereafter, whether known or unknown, or existing now or in the future, Plaintiff's current claims regarding his Hepatitis C diagnosis (which he has had since 1994) and treatment would likewise be included in the Settlement Agreement and should also be dismissed to the state court.

This Motion to Dismiss is based solely on the issue of venue and not on the merits. Defendant wishes to reserve any arguments regarding the merits once proper venue is determined.

## II.    STATEMENT OF FACTS

Plaintiff George Horn, an inmate currently incarcerated at Central Florida Reception Center-South, Orlando, Florida, filed this four-count complaint, alleging in Count I that FDC violated the Plaintiff's 8th Amendment right against Cruel and Unusual Punishment, pursuant to 42 U.S.C. § 1983, by showing deliberate indifference to both his ongoing medical issues with his right hip and chronic Hepatitis C infection.  [Doc. 1, paragraphs 1, 112, 122].  Count II further alleges that FDC failed to accommodate the Plaintiff's disabilities under the ADA and Rehabilitation Act, pursuant to 42 U.S.C. § 12131, 12133 and § 504, by again failing to accommodate the Plaintiff's medical needs related to both his right hip and chronic Hepatitis C infection.  [Doc. 1, paragraphs 3, 146, 151].  Count IV alleges that FDC is in breach of contract by failing to honor those provisions of the November 29, 2016 Settlement Agreement that required specific treatment for his right hip.  [Doc. 1, paragraphs 171-175].  Count III of the Plaintiff's complaint was filed against Centurion of Florida (hereinafter "Centurion") as Plaintiff's care provider and alleges the same 42 U.S.C. § 1983 deliberate indifference claims as were raised against FDC in Count 1 of the complaint.  [Doc. 1 paragraphs 1, 158, 164].

As found in Plaintiff's 2014 law suit, Plaintiff's medical issues with his right hip are chronic and extensive, with his first hip replacement surgery performed sometime in 2000, two more performed between 2002 and 2003, and three more in 2013. [Defendant's Composite Exhibit 1 (Plaintiff's Medical Records)*, Exhibit 2 (excerpts of Plaintiff's May 28, 2015 Deposition in 1:14-CV-20341)]. In every surgical intervention since 2003, infection of the right hip was a factor. [Defendant's Composite Exhibit 1].

The Plaintiff was first diagnosed with Hepatitis C in 1994. [Defendant's Exhibit 2]. The Plaintiff's medical records mention Hepatitis C infection as recurrent condition throughout the period of his most recent prolonged incarceration, beginning with his most recent incarceration with FDC from 2011. [Defendant's Composite Exhibit 1]. Plaintiff asserts in his complaint that treatment for Hepatitis C, in the form of Direct Acting Antivirals (hereinafter "DAA's") was available in 2014. [Doc. 1, paragraph 80].

On or about January 28, 2014, the Plaintiff filed a *pro se* suit against FDC under case number 1:14-CV-20341 in the Southern District of Florida. [Defendant's Exhibit 3 (Plaintiff's Complaint in 1:14-CV-20341)]. That initial suit alleged, among other things, that FDC violated Plaintiff's 42 U.S.C. §

---

- Plaintiff's medical records (Defendant's Composite Exhibit 1) will be included in a separate filing under seal.

4

1983 and 8th Amendment rights due through deliberate indifference to the Plaintiff's "medical problems and issues," focusing mainly on his hip, but broadly on his overall medical condition. [Defendant's Exhibit 3, p. 5].

Plaintiff amended the complaint on April 7, 2014, still arguing FDC's deliberate indifference. [Defendant's Exhibit 4 (Plaintiff's Amended Complaint in 1:14-CV-20341)]. The Plaintiff asserted that in June 2011 he was "very ill, with an infection/rejection of a failed right total hip replacement" and that FDC failed to "help correct or alleviate any of my serious medical needs . . . to address, furnish, or help with adequate and competent care, to any of the evident, obvious, and documented medical problems I arrived here with." [Defendant's Exhibit 4, p. 6, 22]. The Plaintiff further stated that he has, "severe medical problems associated with all of this," and that FDC "was aware of everything Plaintiff suffered from and was denied." [Defendant's Exhibit 4, p. 29].

Plaintiff filed a second amended complaint, this time prepared by counsel, on November 25, 2014 alleging 5 specific counts of deliberate indifference pursuant to 42 U.S.C. § 1983 and the 8th Amendment against five distinct defendants, one of whom was FDC, alleging failure of each to treat the Plaintiff's infected right hip. [Defendant's Exhibit 5 (Plaintiff's 2nd Amended Complaint].

Plaintiff and FDC resolved the 2014 hip and medical treatment litigation by entering into a "General Release of Liability and Settlement Agreement," (hereinafter "Settlement Agreement") on November 29, 2016 and was represented by counsel at the time he executed the agreement. [Doc. 1, Exhibit 1]. Paragraph 2 of the Settlement Agreement addresses release from further liability as follows:

> Plaintiff, in consideration for Defendant's payment of Fifty Thousand Dollars ($50,000.00) and arrangement of a consultation with Dr. Max Steel for hip-joint re-implantation surgery, hereby covenants to forever release and discharge Defendants, the Florida Department of Corrections, the State of Florida, and their agents, contractors, servants, employees, former employees and successor from any and all liability, claims, actions, causes of action, demands, rights, damages costs, expenses, or losses that the undersigned now has or which may accrue hereafter related to or arising from the events and injuries that are or could have been asserted in this action, whether known or unknown, and whether existing now or in the future. [Doc. 1, Exhibit 1, paragraph 2].

Paragraph 10 of the Settlement Agreement further provides:

> The parties agree that if any party breaches this Settlement, the remedy therefore shall be an action for breach of contract and the proper venue for such action will be in state court in Leon County, Florida. [Doc. 1, Exhibit 1, paragraph 10].

Paragraph 13 of the Settlement Agreement also provides that it, "shall be construed and enforced in accordance with the laws of the State of Florida." [Doc. 1, Exhibit 1, paragraph 13].

III. **MEMORANDUM OF LAW**

A. **FORUM NON CONVENIENS IS THE APPROPRIATE PROCEDURAL VEHICLE TO ADDRESS VENUE SELECTION CLAUSES.**

The correct procedure to remove a claim from federal court to state court based upon a venue selection clause is a Motion to Dismiss pursuant to *forum non conveniens,* not 28 U.S.C § 1404. See Atlantic Marine Constr. Co. v. U.S. District Ct. for the W. Distr. of Tx, 134 S.Ct. 568, 574 (2013). "When a forum-selection clause points to a state or foreign forum, the clause may be enforced through the doctrine of *forum non conveniens*. Section 1404(a) is inapplicable to this request as it is a codification of that doctrine for the subset of cases in which the transferee forum is another federal court." (citation omitted)).

"Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even when venue is proper." Vanderham v. Brookfield Asset Mngt., Inc. 102 F. Supp. 3d 1315, 1318 (S.D. Fla. 2015) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947)).

Pursuant to Atlantic Marine, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to

7

the forum specified in that clause." Vanderham v. Brookfield Asset Mgt., Inc. 102 F. Supp. 3d 1315, 1318 (S.D. Fla. 2015) (citing Atlantic Marine Constr. Co. v. U.S. District Ct. for the W. Distr. of Tx, 571 U.S. 49, 62 (2013).

Forum selection clauses are valid on their face and should be enforced unless the opposing party shows enforcement is "unreasonable under the circumstances." Breman v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (citing National Equipment Rental, Ltd. V. Szukhent, 375 U.S. 311 (1964)).

"On a motion based on the doctrine of *forum non conveniens*, the court 'may consider matters outside the pleadings'" Vanderham 102 F. Supp. 3d at 1318 (citing Webster v. Royal Caribbean Cruises, Ltd., 124 F. Supp. 2d 1317, 1320 (S.D. Fla 2000)).

**B.  COUNTS I, II, AND IV AGAINST FDC ARE IN THE INCORRECT FORUM.**

It is well established that the language of a release is the best evidence of the parties' intent. See Hurt v. Leatherby Ins. Co., 380 So. 2d 432, 433 (Fla. 1980). Where such language in such a release is clear and unambiguous, courts cannot indulge in the construction or interpretation of its plain meaning. Id. The instant release language is neither vague, nor ambiguous--on the contrary, it is extremely detailed and specific.

Plaintiff expressly releases Defendant FDC from "any and all" causes of action Plaintiff "now has or which may accrue hereafter related to or arising from the events or injuries that are or could have been asserted in this action, whether known or unknown, and whether existing now or in the future." [Doc. 1, Exhibit 1, paragraph 2]. Such language is clear and unambiguous and has been held as a "complete defense" to all claims which have matured at the time of the execution of the release. See Plumpton v. Continental Acreage Dev. Co., Inc., 830 So. 2d 208, 210 (Fla. 5th DCA 2002) (holding that "any and all liability and claims…from the beginning of the world to the day presents" was clear and unambiguous).

That the release was executed as a result of or in separate litigation is of no legal consequence. Plumpton, 830 So. 2d at 211. To the contrary, no "words of art" are required to be in a release if the intent of the parties is apparent from the language therein. See Hardage Enters., Inc. v. Fidesys Corp., N.V., 570 So. 2d 436, 437 (Fla. 5th DCA 1990) (holding no requirement that the word "negligence" be included in a release for it to bar negligence claims: "There are no words of art required in a release if the intent of the parties is apparent from the language used."). The wording used in the instant Release is legally indistinguishable from the language discussed in Hardage which the court found to be "clear and unequivocal" and which

included the separate negligence claim. Id. at 437. The instant language expressly releases Defendant FDC by name as to "any and all liability, claims, causes of action, damages costs, expenses or losses that the undersigned now has or which may accrue hereafter related to or arising from the events and injuries that are or could have been asserted in this complaint". [See Settlement Agreement attached as Plaintiff's Exhibit 1, Paragraph 2]. Because the language of the Settlement and Release executed by the parties in his previous federal case encompasses and includes Plaintiff's most recent claims against the Defendant for both his hip and his Hepatitis C, all of his claims against FDC should be transferred to the state court for Leon County, Florida.

    i. **COUNT IV (BREACH OF CONTRACT/SETTLEMENT AGREEMENT)**

Count IV of the instant complaint is for a breach of contract or specific performance of the settlement agreement. [Doc. 1, paragraphs 171-175.] Plaintiff's Count IV is expressly based on the Settlement Agreement. [Doc. 1, Paragraphs 171, 172]. Paragraph 10 of the Settlement Agreement directs this action to the state court of Leon County, Florida. Therefore, Count IV should be dismissed.

## ii. COUNTS I(A) AND II(A) (42 U.S.C. § 1983 AND ADA/RA HIP BASED COMPLAINTS)

Plaintiff's Count I(A) and II(A) claims are based upon FDC's alleged failure to adequately treat Plaintiff's hip, which was the primary basis for the Plaintiff's 2014 action against FDC, which culminated in the November 29, 2016 Settlement Agreement attached to this complaint as Exhibit 1. In Paragraph 2 of the Settlement Agreement, Plaintiff released FDC from "any and all liability, claims, actions . . . related to or arising from the events and injuries that are or could have been asserted in this [2014] action, "whether known or unknown, and whether existing now or in the future." [Doc. 1, Exhibit 1, paragraph 2]

Count I(A) of the Plaintiff's instant complaint focuses on FDC's treatment of Plaintiff's hip claiming deliberate indifference – the same allegations which were brought in his 2014 lawsuit. [Doc. 1, paragraphs 104, 112]. As such, they were released by Exhibit 1 and at minimum should follow Count IV to the state court of Leon County Florida.

Count II(B) (ADA/RA claim for Plaintiff's hip) focuses, as did his 2014 action against FDC, on alleged failure to provide him appropriate accommodations during the past few years for hip surgery and related medical issues. [Doc. 1, paragraphs 129, 146]. Because the Plaintiff

11

released FDC from all claims regarding his hip, these claims should also follow Count IV to the state court of Leon County, Florida.

### iii. COUNTS I(B) AND II(B) (42 U.S.C. § 1983 AND ADA/RA HEPATITIS C BASED COMPLAINTS)

The Plaintiff has testified that he was diagnosed with the Hepatitis C virus in 1994, as he admitted the same during his deposition taken in his 2014 hip litigation. [Defendant's Exhibit 2]. Plaintiff's Hepatitis C infection was routinely noted in Plaintiff's medical records from 2010 through 2013. [Defendant's Composite Exhibit 1]. Plaintiff alleges in his instant complaint that he "was long over-due for treatment for his Hepatitis C condition." [Doc. 1, paragraph 38]. Plaintiff filed his instant complaint only 30 months after signing the November 29, 2016 Settlement Agreement. Plaintiff's claims of FDC's failure to treat his Hepatitis C condition existed well before his 2014 lawsuit [Defendant's Composite Exhibit 1 and Defendant's Exhibits 2, 3, 4]. Plaintiff's Hepatitis C claims could have been brought in his 2014 lawsuit. Plaintiff alleges in his complaint that the DAA treatment was available in 2014, which predates the Settlement Agreement by at least two years. [Doc. 1, paragraphs 80, 82]. Plaintiff further links his untreated Hepatitis C condition to a compromise of his immune system and aggravation of his hip infection. [Doc. 1, Introduction and paragraphs 38, 39, 40, 41. 78, 100, 151,

152]. Thus, Plaintiff's Hepatitis C claims in the instant complaint relate to his 2014 allegations of uncontrolled infection and his hip condition and could have been asserted in his 2014 litigation. Accordingly, Plaintiff's Hepatitis C claims in Counts I(B) and II(B) also should be dismissed and should follow Count IV to the state court of Leon County, Florida.

WHEREFORE, for the foregoing reasons, the FDC requests that this court enter an order that dismisses the Plaintiff's Complaint.

## CERTIFICATE OF WORD LIMITATION

In accordance with N.D. Fla. Loc. R. 7.1(F), the number of words in the memorandum, which excludes the case style, signature block, and certificates (conference, word limitation, and service) is 2509.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Christopher C. Torres*
Christopher C. Torres
Assistant Attorney General
Florida Bar No.: 0479209

Anthony D. Johnson
Assistant Attorney General
Florida Bar No.: 0012084

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
christopher.torres@myfloridalegal.com
anthony.johnson@myfloridalegal.com
joann.mrazek@myfloridalegal.com
steven.holcomb@myfloridalegal.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on July 10th, 2019, I electronically filed this document with the Clerk of Court by using the CM/ECF system, which will electronically serve a copy of this document upon the following:

*James V. Cook*
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
cookv@gmail.com
*Counsel for Plaintiff*

*Ryan Joshua Andrews*
*John M. Vernaglia*
Law Offices of Steven R. Andrews, P.A.
822 N Monroe Street
Tallahassee, FL 32303
john@andrewslaw.com
ryan@andrewslawoffice.com
*Counsel for Plaintiff*

*Mary Ann Couch*
*R. Craig Mayfield*
Bradley Arant Boult Cummings, LLP
100 North Tampa Street, Suite 2200
Tampa, FL 33602

macouch@bradley.com
*Counsel for Centurion of Florida and Alexis Figueroa*

/s/ *Christopher C. Torres*
Christopher C. Torres