## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

GEORGE HORN,

     *Plaintiff*,

v.                                   **CASE NO.: 4:19cv127-MW/CAS**

MARK S. INCH, as Secretary
of the Florida Department
of Corrections, et al.,

     *Defendants*.

_____/

## ORDER DENYING DEFENDANT INCH'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

This is a civil rights action. Plaintiff George Horn is a prisoner of the Florida Department of Corrections. Plaintiff is suing the Secretary of the Florida Department of Corrections (the "FDC"), Centurion of Florida, LLC ("Centurion") (FDC's contracted healthcare services provider), and Dr. Alexis Figueroa ("Dr. Figueroa") (a physician who worked at the FDC facility where Plaintiff was incarcerated) for failing to meet his substantial medical needs. *See* ECF No. 27. Specifically, Plaintiff asserts claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") against FDC (Counts I and II), a § 1983 claim for deliberate indifference against Centurion (Count III), and a § 1983 claim for

deliberate indifference against Dr. Figueroa (Count IV). *See* ECF No. 27. FDC has moved to dismiss Counts I and II. ECF No. 39.

This Court has considered, without hearing, FDC's Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 39, as well as Plaintiff's Response in Opposition to FDC's Motion to Dismiss, ECF No. 44. FDC argues that the amended complaint should be dismissed on the basis of *forum non conveniens* pursuant to the terms of a settlement agreement and release Plaintiff executed to resolve a prior action against FDC. FDC argues in the alternative that Plaintiff's ADA and RA claims are barred by the statute of limitations, that FDC is entitled to Eleventh Amendment immunity against Plaintiff's ADA claim, and that Plaintiff has failed to allege sufficient facts in the amended complaint to state a claim under the ADA and RA. ECF No. 39 at 7–26. For the reasons set out below, FDC's motion to dismiss, ECF No. 39, is **DENIED**.

# I

This Court accepts the allegations in the complaint as true and construes them in the light most favorable to Plaintiff. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is facially apparent that the claim is time-barred. *Horsley v. Univ. of Ala.*, 564 F. App'x 1006, 1008 (11th Cir. 2014).

## II

The facts, accepted as true and construed in the light most favorable to Plaintiff, are as follows. Plaintiff is a 57-year-old prisoner of the FDC. ECF No. 27 at 1. Plaintiff suffers from two primary medical issues which Defendants have failed to adequately treat.

### Plaintiff's Hip Condition

First, "for much of his imprisonment," Plaintiff had been missing the top one-third of his thigh bone after an unsuccessful hip replacement surgery (the "hip condition"). ECF No. 27 ¶ 12. As a result, Plaintiff is wheelchair-bound. *Id.* ¶ 20. In 2014, after Plaintiff failed to receive adequate treatment for his hip condition, Plaintiff filed a lawsuit against FDC, among others, for multiple constitutional violations. *Id.* at 1; *see id.* ¶¶ 12–13. In late 2016, Plaintiff successfully negotiated an agreement with the defendants in that lawsuit which provided that Plaintiff would

3

be referred to an orthopedic surgeon for consultation to determine the feasibility of a hip re-implantation surgery (the "2016 Settlement Agreement"). *Id.* ¶ 15. The 2016 Settlement Agreement provided that, should Plaintiff be found to be a candidate for hip re-implantation surgery, the defendants would "make all best efforts" to ensure Plaintiff received the surgery. *Id.* ¶ 15(c). Plaintiff dismissed his lawsuit based on the 2016 Settlement Agreement. *Id.* ¶ 16.

Plaintiff was subsequently denied narcotic pain medication for his hip condition due to the policy of the prison where he was incarcerated. *Id.* ¶¶ 18–19. Plaintiff filed a grievance complaining of the prison's failure to provide him appropriate pain medication. *Id.* ¶ 24. A prison healthcare employee told Plaintiff he would be transferred to "somewhere he didn't want to be" if he complained again. *Id.* ¶ 25. When Plaintiff continued to grieve the failure to treat his hip condition, he was transferred to a facility with a heavy gang population where he was repeatedly threatened, beaten and robbed by prison gang members.[1] *Id.* ¶¶ 26–27.

Plaintiff's hip condition requires him to use an adjustable bed to permit him to sleep comfortably. *Id.* ¶ 28. Plaintiff's surgeon had asked for a hospital bed, an egg-crate type mattress and extra pillows to allow Plaintiff to sleep. *Id.* ¶ 29. After his transfer to the more dangerous facility, Plaintiff was no longer permitted to have

---

[1] Older inmates (including Plaintiff) are recognized by FDC has having "heightened vulnerability" to gang violence and extortion. ECF No. 27 ¶¶ 21, 44.

the hospital bed, and was eventually deprived of a mattress that would accommodate his hip condition. *Id.* ¶¶ 30–33. As a result, Plaintiff had to sleep in his wheel chair for nine months and only slept about three hours each night. *Id.* ¶¶ 31, 35.

After a delay caused by infection,[2] Plaintiff was cleared for hip replacement surgery on or around March 1, 2017. *Id.* ¶ 46. The orthopedic surgeon, although he had not recently seen Plaintiff, refused to operate because Plaintiff had a fused hip and active infection. *Id.* ¶¶ 47–48. The orthopedic surgeon's decision was based on inaccurate information calculated to prevent the surgery, which FDC failed to correct. *Id.* ¶ 49.

Plaintiff's hip infection subsequently returned and increased in severity. *Id.* ¶¶ 50–51. Plaintiff was kept at the facility rather than being transferred to an outside hospital for needed treatment due to the higher costs associated with hospital care and as punishment for his repeated complaints about his inadequate care. *Id.* ¶¶ 52–59.

Despite his worsening infection, Plaintiff continued to be denied pain medications appropriate to the level of pain he was experiencing and received only Ibuprofen or Tylenol. *Id.* ¶ 64. On August 22, 2017, Plaintiff's surgeon

---

[2] Plaintiff alleges the infection resulted from the loss of sleep and his hepatitis C, both of which weakened his immune system. ECF No. 27 ¶ 41.

recommended that the prison provide Plaintiff "chronic pain management, potentially in the form of chronic pain medications, including narcotics and THC." *Id.* ¶ 65. Nonetheless, Plaintiff continued to receive only Tylenol or Ibuprofen for his pain. *Id.* ¶ 69.

As a result of FDC's failure to treat and accommodate his hip condition, Plaintiff remains wheel-chair bound and suffers extreme levels of pain. *Id.* ¶¶ 158–59.

<u>Plaintiff's Hepatitis C</u>

Second, Plaintiff suffers from hepatitis C ("HCV"). ECF No. 27 ¶ 70. Plaintiff was diagnosed with HCV in approximately 2013, while incarcerated at FDC. *Id.* ¶ 111. Plaintiff requested treatment in 2013, but was told that he did not meet FDC's guidelines for treatment. *Id.*

In late 2013, direct-acting antiviral ("DAA")—a more effective treatment for HCV—became available. *Id.* ¶¶ 92–96. Treatment with DAA drugs has been the standard of care for the treatment of HCV since 2014. *Id.* ¶ 99. Treatment with DAA drugs is expected to cure nearly all HCV-infected persons, but delayed treatment increases the risk that the treatment will be ineffective. *Id.* ¶¶ 100–02.

Plaintiff again requested HCV treatment in 2014, after DAA drugs were available. *Id.* ¶ 112. Plaintiff's request was denied. *Id.* Between 2014 and 2018

, Plaintiff filed numerous grievances and appeals requesting treatment for HCV. *Id.* Each of those grievances and appeals were also denied. *Id.* Instead, Plaintiff was only given routine blood draws to monitor his HCV until approximately January 2019. *Id.* ¶ 113. Plaintiff finally received DAA treatment for his HCV in January 2019. *Id.* ¶ 136.

FDC refused to provide treatment for Plaintiff's HCV because FDC had a policy and practice of not providing DAA drugs to HCV patients. *Id.* ¶ 109. This policy and practice was implemented because of the high, unbudgeted cost of DAA treatment. *Id.* ¶ 110. While FDC categorically withheld treatment from FDC inmates with HCV, it did not categorically withhold treatment from inmates with other similar diseases or conditions, or did it withhold treatment from inmates without similar diseases or conditions. *Id.* ¶ 109.

Plaintiff has suffered injuries, including irreparable liver damage, as a result of FDC's delay and denial of treatment for his HCV. *Id.* ¶¶ 118–20.

Plaintiff filed his original complaint on March 17, 2019. ECF No. 1.

### III

FDC first argues Plaintiff's ADA and RA claims are, in substance, claims for breach of the 2016 Settlement Agreement that must be dismissed based on that agreement's forum selection clause requiring any claim for breach of the agreement to be filed in a specific state court. ECF No. 39 at 7–13.

As a preliminary matter, this Court must determine whether the 2016 Settlement Agreement may be considered in analyzing FDC's motion to dismiss. While the 2016 Settlement Agreement was attached as an exhibit to Plaintiff's original complaint, *see* ECF No. 1-1, it was not attached to Plaintiff's first amended complaint. *See* ECF No. 27.[3] FDC has attached the 2016 Settlement Agreement to its motion to dismiss and argues that this Court can consider it because (1) Plaintiff referred to the agreement in the amended complaint, (2) the agreement is central to Plaintiff's claim, and (3) FDC attached the document to its motion to dismiss. *See* ECF No. 39 at 7–8 (citing *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276 (11th Cir. 2007)). The first and third elements are clearly satisfied. *See* ECF No. 27 ¶¶ 15–17; ECF No. 39-1.  Whether the second element is satisfied is a closer call.

Whether the 2016 Settlement Agreement is "central" to Plaintiff's claim turns on whether Plaintiff will "ultimately have to offer a copy of [the agreement] to prevail under any conceivable theory of [his] case." *See Fin. Sec. Assur., Inc.*, 500 F.3d at 1285. "Documents relevant to the defendant's affirmative defenses, rather than plaintiff's claim, will fail to meet the centrality requirement." *SOS Furniture*

---

[3] The fact that Plaintiff attached the 2016 Settlement Agreement to his original complaint does not mean this Court may consider the 2016 Settlement Agreement in considering FDC's motion to dismiss Plaintiff's amended complaint. *See Hernandez v. J.P. Morgan Chase Bank N.A.*, No. 14-24254, 2016 WL 2889037, at *4–5 (S.D. Fla. May 16, 2016) ("[W]hen Plaintiff filed the Third Amended Complaint, the Second Amended Complaint (and its attached exhibits) 'became a legal nullity.' ") (quoting *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016)).

*Co., Inc. v. Salem*, No. 6:18-cv-898, 2019 WL 279887, at *2 (M.D. Fla. Jan. 22, 2019) (citing *Lockwood v. Beasley*, 211 F. App'x 873 (11th Cir. 2006)).

FDC argues the 2016 Settlement Agreement is "central" to Plaintiff's claims based on Plaintiff's allegations that FDC breached the agreement and that FDC's breach of the agreement "necessitate[ed] a return to litigation." *See* ECF No. 39 at 8 (quoting Am. Compl. at 1–2, ¶ 17).

This Court disagrees. The 2016 Settlement Agreement may relate to FDC's defenses (i.e., release), but Plaintiff need not offer the letter into evidence to prevail on his ADA and RA claims. Plaintiff's ADA and RA claims extend beyond allegations that FDC failed to comply with terms of the 2016 Settlement Agreement. The terms of the 2016 Settlement Agreement, as alleged by Plaintiff, relate to treatment of his hip condition. *See* ECF No. 27 ¶ 15. Plaintiff also alleges that FDC categorically withheld treatment from FDC inmates with HCV but did not categorically withhold treatment from other inmates. *See* ECF No. 27 ¶ 109. Taken as true, these facts alone plausibly allege claims against FDC under the ADA and RA. *See Postawko v. Mo. Dep't of Corr.*, No. 2:16-cv-04219, 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017) (denying motion to dismiss ADA claims based on defendant's refusal to provide DAA treatment to inmates with HCV).

This Court therefore declines to consider the 2016 Settlement Agreement in resolving FDC's motion to dismiss. *See, e.g., SOS Furniture Co., Inc.*, 2019 WL

279887, at *4 (declining to consider extrinsic materials central to the defendant's defenses, but not the plaintiff's claim).[4]

## IV

FDC next argues Plaintiff's ADA and RA claims cannot proceed because they are untimely. The statute of limitations on federal ADA and RA claims arising in Florida is four years. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 841 (11th Cir. 2017). Accordingly, because Plaintiff filed his original complaint on March 17, 2019, Plaintiff's claims are timely if they accrued after March 17, 2015. "Generally, accrual occurs when the prisoner knows or should know that he has suffered the injury that forms the basis of his complaint and can identify the person who inflicted the injury." *Baker v. Sanford*, 484 F. App'x 291, 293 (11th Cir. 2012) (per curiam) (unpublished) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)). "However, an 'allegation of a failure to provide needed and requested medical care constitutes a continuing tort, which does not accrue until the date medical attention is provided.' " *Id.* (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980)); *see Lewis v. Bd. of Trs. of Ala. State Univ.*, 874 F. Supp. 1299, 1304 (N.D. Ala. 1995) ("The series of denials of the requests [for accommodation of plaintiff's disability]

---

[4] Even if this Court were to consider the 2016 Settlement Agreement, it would not dismiss Plaintiff's amended complaint because, as Judge Hinkle found in denying FDC's motion to dismiss Plaintiff's original complaint, "[any constitutional or statutory violation that occurred after entry of the release was not and could not have been asserted in the prior action. Or so the plaintiff could reasonably have understood based on" the agreement's language. *See* ECF No. 31 at 2.

can be conceptualized as a series of discriminatory acts which continues into the filing period.").

FDC contends the statute of limitations on Plaintiff's ADA and RA claims began to run in 2014, when FDC denied the first of Plaintiff's formal grievances requesting DAA treatment. ECF No. 39 at 15. The crux of FDC's argument is that Plaintiff's claims accrued when he became aware FDC was refusing to treat his HCV in 2014, making the filing deadline for his ADA and RA claims, at the latest, December 31, 2018. According to FDC, Plaintiff's ADA and RA claims should be dismissed as untimely because he did not file his lawsuit until March 2019. ECF No. 39 at 17.

FDC further argues that the "continuing violation" doctrine is inapplicable here because Plaintiff knew or should have known about the denials of his requests for DAA treatment in 2014. ECF No. 39 at 15–17 (citing *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006)).

The facts of *Hamilton* are readily distinguishable. In that case, several environmental agencies sued the Secretary of the Department of the Interior for failing to designate critical habitat for a threatened species within the timeframe set forth by the applicable statutory scheme. 453 F.3d at 1333. The plaintiffs sued more than twelve years after the Secretary failed to designate the critical habitat, and the Secretary argued that the complaint was time-barred under the applicable six-year

limitations period. *Id.* at 1333–34. The plaintiffs asserted a continuing violations theory, arguing that "the passage of each day creates an additional cause of action, which triggers anew the running of the six-year limitations period." *Id.* at 1334–35. The district court rejected the continuing violations theory and dismissed the case as time barred. *Id.* at 1333. The Eleventh Circuit affirmed, finding that the plaintiffs were complaining of the continuing effects of the failure of the Secretary to designate the critical habitat by the statutory deadline, a one-time violation of the law. *Id.* at 1335.

Here, in contrast to *Hamilton*, Plaintiff is not complaining of the continuing effects of FDC's one-time failure to treat his HCV. Rather, Plaintiff alleges FDC repeatedly rejected his requests for treatment throughout his incarceration. FDC's alleged failure to provide adequate medical treatment, despite Plaintiff's repeated grievances, "constituted a continuous injury during the statute of limitations period." *See Baker*, 484 F. App'x at 293.

FDC also cites *Smith v. Dozier*, No. 5:17-cv-00298, 2018 WL 3551503 (M.D. Ga. July 24, 2018), *appeal denied*, 2018 WL 7203222, at *1 (11th Cir. Nov. 8, 2018), *cert. denied*, 139 S. Ct. 2030 (2019), *reh'g denied*, 2019 WL 3538201 (Aug. 5, 2019) in support of its contention that the continuing violation doctrine is inapplicable because Plaintiff knew or should have known of FDC's policy of refusing DAA treatment in April 2014. ECF No. 39 at 16. This Court declines to follow the *Smith*

court's lead for two reasons. First, "even if it was facially apparent from the amended complaint that [Plaintiff] knew or should have known [by December 31, 2014] that [FDC was] injuring him," this Court would not dismiss his claim against FDC on statute-of-limitations grounds "because he adequately alleges a continuing violation of the law." *See Hutchinson v. Cunningham*, No. 2:17-cv-185, 2018 WL 1474906, at *9 (M.D. Ala. Jan. 23, 2018), *report and recommendation adopted*, 2018 WL 1474532 (M.D. Ala. Mar. 26, 2018); *cf. Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1119 (M.D. Ala. 2016) ("[I]t would be nonsensical . . . to conclude that once some harm has occurred, a prisoner must bring a claim within a certain period of time, even though the conduct of the defendants that is creating the risk continues unabated.").

Second, the court in *Smith* relied on *Hamilton* and *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001) in finding the continuing violation doctrine inapplicable to an inmate's Eighth Amendment, ADA and RA claims based on a failure to treat his HCV. *See* 2018 WL 3551503, at *2. As this Court has explained, however, *Hamilton* is factually distinguishable. The facts in *Hipp* are also distinguishable. In that case, the plaintiff testified that he resigned from his job because he suspected age discrimination. 252 F.3d at 1222. The plaintiff did not timely file a charge of discrimination with the EEOC, but sought to avoid dismissal of his claim from a later-filed opt-in collective action based on the continuing violation doctrine. *Id.* at 1220–21. The Eleventh Circuit held the continuing violation

13

did not apply because the plaintiff suspected unlawful discrimination at the time he resigned. *See id.* at 1222; *id.* at 1222 n.12. Thus, in both *Hamilton* and *Hipp*, the plaintiffs were aware of the unlawful acts underlying their claims yet failed to seek relief within the applicable statute of limitations periods.

In the instant case, even if the general rule set forth in *Hamilton* and *Hipp* were applicable,[5] it is not clear from the face of the amended complaint that Plaintiff knew or should have known that FDC was violating his rights under the ADA and RA more than four years before he filed this lawsuit. Accepting Plaintiff's allegations as true and construing them in his favor, Plaintiff had no reason to believe that FDC had a policy of intentionally and categorically withholding treatment from HCV inmates based on the cost of DAA drugs. For example, FDC represented to Plaintiff that its refusal to treat his HCV was due to Plaintiff not meeting the requirements for treatment under FDC's guidelines. *See* ECF No. 27 ¶ 111. Plaintiff's ADA and RA claims are therefore not due to be dismissed as time-barred. *King v. Henry*, No. 6:15-cv-17, 2016 WL 5024228, at *7 (S.D. Ga. Sept. 16, 2016) ("Plaintiff alleges that Defendants have continually denied his requests for treatment

---

[5] Although the Eleventh Circuit's unpublished decision in *Baker* is only persuasive authority, it is directly on point, and is consistent with the statement quoted in *Lavellee* (which is binding authority) that "an 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.' " *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

for Hepatitis C from 2011 through 2016 . . . . It is not clear from the face of his Complaint that Plaintiff was armed with sufficient facts to bring his claims to the Court [outside the statute of limitations period]. Consequently, at this early stage, the Court should not dismiss any of his claims as time-barred . . . ."), *report and recommendation adopted*, 2016 WL 6272386 (S.D. Ga. Oct. 25, 2016).

The continuing violations of Plaintiff's rights did not end until he received DAA treatment in January 2019. *See* ECF No. 27 ¶¶ 136; *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007) (unpublished) ("When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases."). Plaintiff had four years from that date—i.e., until January 2023—to file his ADA and RA claims against FDC. Since he filed his lawsuit on March 17, 2019, Plaintiff's ADA and RA claims are timely.

## V

FDC next argues it is entitled to Eleventh Amendment immunity against a cause of action under the ADA because Plaintiff has failed to sufficiently allege a violation of the Eighth Amendment. ECF No. 39 at 17–22.[6]

---

[6] "The Eleventh Circuit, in an unpublished opinion, has indicated that the Eleventh Amendment immunity analysis is appropriately conducted under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Singleton v. Pub. Health Tr. of Miami-Dade Cty.*, 203 F. Supp. 3d 1181, 1184 (S.D. Fla. 2016) (citing *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010)). "Regardless of whether Eleventh Amendment immunity is considered a jurisdictional defense or some sort of other defense (e.g., failure to state a claim upon which relief can be

Title II of the ADA abrogates state sovereign immunity "for conduct that violates both Title II and the Fourteenth Amendment." *Black v. Wigington*, 811 F.3d 1259, 1269 (11th Cir. 2016) (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)). In other words, "Congressional abrogation of the States' sovereign immunity is valid when the statutorily proscribed conduct simultaneously violates a constitutional guarantee protected by the Fourteenth Amendment."[7] *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1304 (11th Cir. 2011) (citing *Georgia*, 546 U.S. at 158–59). If Plaintiff meets this standard, the Eleventh Amendment will not bar his ADA claim.

Plaintiff has sufficiently alleged FDC was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. To state a claim for deliberate indifference, Plaintiff must allege (1) a serious medical need, (2) defendant's deliberate indifference to that need, and (3) causation between FDC's indifference and Plaintiff's injuries. *Gobert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

First, HCV is a serious medical need. *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017) (finding plaintiff's allegation that he was diagnosed with hepatitis

---

granted), the Court's analysis is substantially the same because the instant motion constitutes a facial attack as to the sufficiency of the complaint." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

[7] The Eighth Amendment "is applicable to the States by reasons of the Due Process Clause of the Fourteenth Amendment." *Robinson v. California*, 370 U.S. 660, 675 (1962).

16

C satisfied the first prong of the deliberate-indifference inquiry). Second, Plaintiff sufficiently alleges FDC was deliberately indifferent to that need by alleging (1) treatment with DAA medication has represented the medical standard of care for treatment of chronic HCV since 2014 and (2) until approximately November 2017, FDC enforced a policy of not providing DAA drugs to inmates with HCV due to the cost of the treatment. *See* ECF No. 27 ¶¶ 99, 106, 110; *Mitchell*, 873 F.3d at 876; *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference . . . . Furthermore, if necessary medical treatment has been delayed for non-medical reasons, a case for deliberate indifference has been made out."); *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) ("[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.") (quoting *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999)). Third, Plaintiff has sufficiently alleged the causation element by alleging FDC's policy resulted in his injuries. *See* ECF No. 27 ¶¶ 173, 175; *cf. Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[T]he causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights . . . .") (alteration in original) (internal quotation marks omitted).

17

Finally, FDC's argument that its refusal to provide DAA treatment for Plaintiff's HCV because it determined Plaintiff's "HVC status has been stable" does not constitute an Eighth Amendment violation, *see* ECF No. 39 at 21, is unavailing. As one court recently explained,

> Because chronic HCV is a progressive disease and a delay in treatment with DAA drugs reduces the benefits associated with treatment, Defendant's policy of delaying DAA treatment until the disease has progressed to a far more serious level causes unnecessary and wanton infliction of pain and increases the risk of serious damage to the health of those inmates suffering from chronic HCV.

*Barfield v. Semple*, No. 3:18-cv-1198, 2019 WL 3680331, at *12 (D. Conn. Aug. 6, 2019) (internal quotations, citations, and alterations omitted); *accord* ECF No. 27 ¶¶ 102, 108, 118–21 (alleging, *inter alia*, "Plaintiff has suffered serious and substantial injuries, including irreparable damage to his liver, as a result of the Defendants' delay in providing adequate medical care and treatment").[8] Plaintiff sufficiently alleges that FDC withheld medical treatment with DAA drugs based solely on cost, even though there is no other recommended medical treatment for HCV, *see* ECF No. 27 ¶¶ 109–10, "disregards an excessive risk to the health of the infected inmates and thus constitutes deliberate indifference to a serious medical need." *See Chimenti v. Pa. Dep't of Corr.*, No. 15-3333, 2017 WL 3394605, at *7 (E.D. Pa. Aug. 8, 2017).

---

[8] The Eleventh Circuit's decision affirming summary judgment in *Black v. Ala. Dep't of Corr.*, 578 F. App'x 794 (11th Cir. 2014) is distinguishable because it was undisputed that the inmate had "not suffer[ed] any negative health consequences from not being in the Hepatitis C Treatment Program"). 578 F. App'x at 795–96.

Accordingly, FDC is not entitled to Eleventh Amendment immunity against Plaintiff's ADA claim.

## VI

Finally, FDC argues Plaintiff's ADA and RA claims must be dismissed because Plaintiff has failed to allege he was denied DAA drugs because of his disability. ECF No. 39 at 22–26. Rather, according to FDC, Plaintiff alleges only inadequate treatment of his HCV and that FDC denied HCV treatment because of the cost of treatment. ECF No. 39 at 25–26.

To state a claim under the ADA and RA, Plaintiff must allege: "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (unpublished) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).[9]

Plaintiff alleges more than a disagreement with his medical treatment. Indeed, Plaintiff alleges that FDC refused to provide him DAA drugs, the only medical

---

[9] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005) (unpublished).

treatment available for HCV under the prevailing standard of care. ECF No. 27 ¶¶ 99, 109–110, 113. Despite Plaintiff's HCV diagnosis, severe HCV-related symptoms, and repeated requests for treatment, FDC failed to provide Plaintiff with DAA treatment from 2014 to 2019. ECF No. 27 ¶¶ 112, 136. On the other hand, inmates with other illnesses (such as HIV) are provided lifesaving medications. ECF No. 27 ¶ 110. In short, Plaintiff alleges discriminatory access to the prison's services because he alleges a policy under which FDC does not provide inmates with chronic HCV lifesaving medications for their disability while inmates with other disabilities do have access to lifesaving medications.

Plaintiff has therefore sufficiently stated prima facie claims under the ADA and RA. *See Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 994 (11th Cir. 2015) (unpublished) (holding that prison's failure to give an inmate treatment prescribed by his dermatologist was "sufficient for the [inmate] to plead a prima facie ADA claim"); *Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1297 n.4 (N.D. Fla. 2019) (collecting cases); *see also Postawko v. Mo. Dep't of Corr.*, No. 2:16-cv-04219, 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017) (denying motion to dismiss ADA claims based on defendant's refusal to provide DAA treatment to inmates with HCV).

## VII

Accordingly, FDC's motion to dismiss, ECF No. 39, is **DENIED**.

**SO ORDERED on October 17, 2019.**

**s/Mark E. Walker**
**Chief United States District Judge**