## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

GEORGE HORN,

     Plaintiff,

v.

MARK INCH, et al.,

     Defendants.

Case No. 4:19-cv-127-RH-CAS

## RESPONSE IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, GEORGE HORN, through counsel, files his Response in Opposition to Centurion of Florida, LLC ("Centurion") and Dr. Alexis Figueroa ("Figueroa") ("Defendants"), Motion for Summary Judgment, and would show:

1. Dr. Figueroa and Centurion argue the following defenses:

   a. Deliberate indifference requires proof of gross incompetence;

   b. Dr. Figueroa's treatment was consistent with the standard of care;

   c. Dr. Figueroa's treatment did not violate the Constitution

   d. Plaintiff cannot show "increased physical injury" caused by delay;

   e. Centurion did not have an unconstitutional policy or custom;

   f. Any preclusive effect of *Hoffer* requires Defendants' dismissal;

   g. Plaintiff's claims are barred by the rule against "claim-splitting;"

   h. Plaintiff cannot show a "more than de minimis" physical injury.

## PLAINTIFF'S STATEMENT OF DISPUTED
## AND ADDITIONAL FACTS

Plaintiff responds to Defendants' Statement of Undisputed Facts as follows:

Hepatitis C is the most common bloodborne viral infection in the United States.1–3 It was a cause of more deaths in 2013 than sixty other infectious diseases combined, including HIV, pneumococcal disease, and tuberculosis.4 While the prevalence of hepatitis C in the noninstitutionalized US population is approximately 1 percent, the prevalence among prison inmates is about 17 percent. (Exh. 1, New Hepatitis C Drugs, at 2).

According to the Health Services Bulletin, HSB 15.03.09, Supplement #3, "the risk for rapid progression within one year begins to be measurable when the patient reaches F2." (Exh. 2 at 3, HSB 15.03.09, Supp. #3). With F4 indicative of cirrhosis, Plaintiff George Horn had clinical history suggesting cirrhosis since 2016 and tests showing advanced fibrosis in 2017. (ECF 100-1 at 4, Chertoff Report).

In November of 2017, this Court found the Florida Department of Corrections (FDC) had been deliberately indifferent in failing to provide treatment to prison inmates in Florida. *Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1294 (N.D. Fla. 2019). Mr. Horn was a member of the *Hoffer* class. (ECF 101 at 4). He did not receive HCV treatment until early 2019.

But the failure to treat is only part of the medical deliberate indifference showed by FDC, through its medical contractor Defendant Centurion of Florida

and Centurion's employee, Chief Health Officer Defendant Dr. Alexis Figueroa. Mr. Horn had a right leg with no skeletal connection to the rest of his body. (Exh. 3, Horn Affidavit at ¶1). Plaintiff's surgeon prescribed Mr. Horn an adjustable hospital bed to support his trunk, hips, and legs so they wouldn't shift in sleep, creating intolerable pain at his disconnected right hip. While Plaintiff needed infirmary care, Dr. Figueroa permitted him to be moved out of the Infirmary to Suwannee Annex. With that move, Plaintiff lost his hospital bed and air mattress, leaving him to sleep in his wheelchair rather than a flat bed that could not give the needed support. Under these conditions, Mr. Horn could only sleep 2-3 hours a night. He lost muscle mass and without an air mattress, his bones pressed against his skin. He was only given Ibuprofen, 200 gr., for pain.  (Id. at ¶2).

Dr. Figueroa also took away the special Iodoform gauze wound packing specifically made for serious infections with tunneling drainage, like Mr. Horn's and replaced it with cheap ineffective un-treated gauze. The Centurion medical department was filthy. Plaintiff wore a PICC line for three years for his antibiotics but medical staff would rarely flush it and didn't use the sterile pads at the insertion site. When they finally did flush it, it had red-brown sediment coming out. Plaintiff suddenly felt very cold and felt he was going septic. On November 27, 2017, Plaintiff was tested with a Fibrosis Level 3-4. Level 4 is cirrhosis. Centurion didn't do a biopsy or any further testing or schedule treatment. (Id. at ¶3).

Stress, pain, and lack of sleep, added to the severe viral infection combined to undermine his body's resistance to the bacterial infection that delayed Mr. Horn's hip operation. But even after the infection had cleared, Dr. Figueroa failed to correct the misapprehension by Dr. Steel that Mr. Horn had an active infection and a "frozen hip joint" (clearly impossible since Mr. Horn had no hip joint) that caused Dr. Steel to cancel the new hip replacement surgery date. (Id. at ¶4).

Dr. Figueroa was never supportive of Mr. Horn but unremittingly hostile to him and Dr. Figueroa did not discourage his staff from expressing the same kind of hostility. Dr. Figueroa permitted security staff to abuse Mr. Horn, in one case, forcing him to get out of bed with his unattached leg and make his bed as if he were able inmate with normal mobility. (Id. at ¶4).

Plaintiff disputes Defendants' allegation that Plaintiff's complaint was with respect to "osteomyelitis." Plaintiff suffered tunneling "sinus" infections in the flesh of his right thigh which resulted from Dr. Figueroa's ineffective wound care and the filth[1] and stressful living conditions that Dr. Figueroa imposed created the circumstances which, in addition to the misinformation provided to Dr. Steel that resulted in the cancellation of a surgery opportunity, interfered with Mr. Horn's hip

---

[1] The filth of the medical department at Suwannee CI and the failure of medical staff to regularly flush the PICC line that plaintiff had to wear because of his frequent courses of antibiotics, led to the sediment in the PICC line the medical staff later tried to blame on plaintiff as proof that he tried to introduce some kind of substance into the IV. (Exh. 3, Horn affidavit at 3).

4

replacement. The additional factor of the untreated HCV also played a role in the delay of effective treatment. (Id. at ¶1).

Plaintiff disputes the characterization that Plaintiff contends Centurion had a policy and practice of delaying care for his hip. Rather, Centurion had a policy and practice of delaying costly off-site care generally, although it did not have the ability to provide the care with its own staff. Plaintiff admits that Centurion took over the health care provider contract for the Department of Corrections in May 2016. But as the Court noted in *Hoffer v. Jones*, "the change in contractor did not come with a change in behavior; inmates with HCV were still not being treated." 290 F.Supp.3d 1292, 1298 (N.D. Fla. 2017).  Defendants rely on their own experts for the allegation that Dr. Figueroa "routinely monitored Horn's chronic HCV." Plaintiff has not been able to discern that from the medical records of Plaintiff's care. However, Plaintiff agrees the fibrosis test showing a fibrosis level of F3-F4 occurred on November 27, 2017.[2] (ECF 100-2 at 28, Rieger Report).

Plaintiff agrees with Defendants that the progression of HCV is tracked by monitoring the patient's liver scarring, which is usually measured on the METAVIR scale. The METAVIR scale has five stages: "a person can be classified F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis)." ECF 101 at 5, *citing Hoffer* at 1294-95. Plaintiff also agrees with

---

[2] Days after this Court's order in *Hoffer v. Jones*, 290 F.Supp.3d 1292 (N.D. Fla., Nov. 17, 2017).

Defendants that the treatment for HCV is costly. Id. at 6. Within days, Plaintiff would test at F3-F4. (Exh. 3 at ¶ 3).

Plaintiff agrees with Defendants that FDC pled to the Court that the Legislature failed to provide the money they needed to provide the effective, life-saving Direct-Acting Antiviral (DAA) drugs to the prison inmates in their care. Nevertheless, the Court found FDC "deliberately indifferent" under the law. In the same way, Centurion pleads that the Florida Department of Corrections did not provide the money they needed to administer the DAA drugs to their prisoner patients. (ECF 101 at 6). Centurion was not made a defendant in the Hoffer case since FDC had a non-delegable duty to provide the care.

Plaintiff's medical expert, Dr. Jason Chertoff and Defendants' medical expert, Dr. Dean Rieger, both agree that Plaintiff's fibrosis test registered F3-F4. Defendants submit that the disagreement is "immaterial" because "Horn received treatment consistent with Hoffer's requirements for an F3-F4 inmate suffering from Cirrhosis." (ECF 101 at 8). But this is not actually true. After being identified for treatment in March 2018, Plaintiff's treatment was delayed for another ten months because Dr. Figueroa allegedly "became concerned" that Plaintiff was using illegal drugs. (Id., relying on the report of Defendants' expert[3]). It should be noted that nowhere in the medical records is there any indication of a positive drug test or any

---

[3] All the references to alleged disputed drug use comes through Defendants' expert, Rieger.

kind of medical evidence and Defendants do not claim to have such evidence. Plaintiff has denied using illegal drugs in prison. (Exh. 3, Horn Affidavit at ¶5).

In any case, Plaintiff's expert has said that the alleged drug use, if true, would not have been a contraindication for the administration of the course of DAA drugs and that Plaintiff had no other condition or medication conflict that would have made the administration of DAA drugs inadvisable. (ECF 100-1 at 6, Chertoff Expert Report). The competing versions of events – to the extent that there is any admissible evidence – would be for a Jury.

Defendants insist that there was no harm to Plaintiff's liver (per their expert), but discount that the delay in treatment caused Plaintiff any harm in its effect on his over-all health and his ability to fight infection. Of course, Plaintiff can give his own perspective on the harm caused by the filth, the failure to keep the PICC line flushed, the failure of effective wound treatment, the denial of a professional treatment environment, an adjustable hospital bed or air mattress, to permit proper rest, and failure to receive pain management. (Exh. 3, Horn Affidavit at ¶2-3).

Defendant elicited from Mr. Horn that he thought Dr. Figueroa's "hands were tied" and that he was told not to spend money on what it would cost to do what the specialist said. After Mr. Horn said he thought Dr. Figueroa's hands were "tied," defendants add the words "by FDC," which were words that Plaintiff never

uttered.[4] (ECF 102, Horn Deposition at 178:11-13). There is nothing apparent in the record that suggests FDC went behind Centurion' s back to give orders to Centurion's employee, Dr. Figueroa, or that Plaintiff believed that to be the case.

Defendants repeatedly make reference to osteomyelitis. Although there is a history of osteomyelitis, the kinds of infection that Plaintiff refers to are the tunneling sinus infections in the leg tissue itself. There may or may not be an underlying osteomyelitis but that is not the kind of infection that Mr. Horn was fighting in 2016 and 2017. And ultimately, the hip replacement was able to take place in 2018. Currently, Mr. Horn is infection-free. He is being considered for surgery to repair the scar damage caused by the tunneling infections in his right thigh. He does have drainage of seroma fluid which is composed of blood plasma that seeps out of ruptured small blood vessels after surgery. (Exh. 3 at ¶ 6).

## MEMORANDUM OF LAW

Summary judgment is appropriate when pleadings and evidence demonstrate "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment has the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

[4] This Court has warned of the perils of taking such liberties: "Discrepancies between factual assertions in the parties' memoranda and the actual record do not go unnoticed." (ECF 66 at 3, Amended Scheduling and Mediation Order).

As the U.S. Supreme Court said in *Estelle v. Gamble*:

> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citations omitted).

## A. Plaintiff Need Not Prove that Dr. Figueroa Was Incompetent

Although deliberate indifference may be proved in some cases by the doctor's incompetence, and although Plaintiff does not here argue that Dr. Figueroa *was* competent, it is not, as Defendants suggest, a necessary predicate to deliberate indifference. Here, where the issue is not so much incompetent treatment as *failure to treat*, the issue may be to save money or to save effort.

The North Star of Centurion's policy with regard to hepatitis C was cost. Centurion and Dr. Figueroa do not deny that. They contend the cost barrier was not their fault since FDC did not budget them money to treat that disease, but that is the same argument FDC made with regard to the Florida Legislature and that did not save FDC from being found to be deliberately indifferent. Simply put, Dr. Figueroa and Centurion were both parties to an agreement not to adequately treat inmates for a disease that was certain to cause the death of some of them. That inevitably led to some dishonesty between the doctor and the patient and violation of the Hippocratic Oath. The only honorable course would have been to quit and

perhaps speak out, as Dr. Carl Maier did.[5]

This Court called a halt to the charade, which was Plaintiff's good fortune and ultimately the Defendants' as well. Their dilemma is well expressed in the lines quoted by the defendants themselves from *Marbury v. Warden*:

> Subjectively, the [prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference. Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act.

*Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). Dr. Figueroa and the Centurion corporate officials had all that awareness and declined to act.

FDC blamed the Florida Legislature for the lack of funding but was still found deliberately indifferent. Centurion blames FDC for lack of funding but can still be found deliberately indifferent. Federal courts have made it clear that prisons have an obligation to provide medical care to prisoners. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). A "lack of funds for facilities" can't justify an "unconstitutional lack of competent medical care and treatment for inmates." *Ancata v. Prison Health Servs., Inc*., 769 F.2d 700, 705 (11th Cir. 1985). *See Gates v. Collier*, 501 F.2d 1291, 1319 (5th Cir.1974) ("It should not need repeating that

---

[5] Dr. Carl Maier, who had been the Medical Director of the FDC Reception and Medical Center hospital for Centurion's contract predecessor, Corizon, testified that a pilot program was developed for 12 Florida prison inmates "who were the most advanced with hepatitis C" but the program ended when it was decided that there was not enough money to treat even those 12. (Exh. 4, Deposition of Dr. Albert Carl Maier, *Hoffer v. Jones*, 4:17cv214-MW/CAS).

compliance with constitutional standards may not be frustrated by legislative

inaction or failure to provide necessary funds"); *Hamm v. DeKalb Cty*., 774 F.2d

1567, 1573-74 (11th Cir. 1985) (states may not wholly deny care or provide care

"below some minimally adequate level" so as to pursue the "state's interest in

limiting the cost of detention"); *Harris v. Thigpen*, 941 F.2d 1495, 1509 (11th Cir.

1991) ("We do not agree that 'financial considerations must be considered in

determining the reasonableness' of inmates' medical care to the extent that such a

rationale could ever be used by so-called 'poor states' to deny a prisoner the

minimally adequate care to which he or she is entitled").

## B. Dr. Figueroa's Treatment of Plaintiff Was outside the Standard of Care

Dr. Figueroa and Centurion do not even pretend that their treatment of

Florida inmates for HCV prior to November 17, 2017, was within the standard of

care. Their only argument is that Mr. Horn cannot prove, even in the light most

favorable to him, that he had been harmed prior to November 17, and that the

further delay in treatment to January 2019, was a medically based decision.

A plaintiff attempting to prove an Eighth Amendment violation must

demonstrate both that there was an objectively serious medical need and that

prison personnel were deliberately indifferent to that need. *Farrow v. West*, 320

F.3d 1235, 1243 (11th Cir.2003). A serious medical need is "one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention."

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994). In either

situation, the need must be "one that, if left unattended, poses a substantial risk of

serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir.2000). Deliberate

indifference has three elements: "(1) subjective knowledge of a risk of serious

harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999). Deliberate indifference

can occur where the prison official knows of the prisoner's medical need, but

delays care unnecessarily or does not provide care at all. *Farrow v. West*, 320 F.3d

1235, 1246 (Fla. 11th Cir. 2003). Deliberate indifference can also occur where the

care given is so cursory as to amount to no treatment at all. *See Ancata v. Prison

Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir.1985). *Parzyck v. Prison Health

Services, Inc.,* 290 Fed. Appx. 289, 290–91 (11th Cir. 2008). "The inadvertent or

negligent failure to provide adequate medical care cannot be said to constitute an

unnecessary and wanton infliction of pain." *Farrow v. West*, 320 F.3d 1235, 1243

(11th Cir.2003). However, here, the delay was anything but inadvertent.

## C. Dr. Figueroa's Failure to Treat Violated the Constitution

The following facts are not at issue: Defendant Figueroa was a physician at

Suwannee CI and Plaintiff was his patient. Defendant Figueroa was subjectively

aware of Plaintiff's serious medical needs and conditions, including Plaintiff's hip

condition and his HCV. Plaintiff's medical condition posed a substantial risk of serious harm. Dr. Figueroa knew of this substantial risk of serious harm. From the remaining facts that are, to some extent, disputed between the parties, a jury could reasonably infer Defendant Figueroa disregarded those risks and harms by failing to provide Plaintiff with the medication and care that would alleviate those risks and harms and that Defendant Figueroa's deliberate indifference to Plaintiff's serious medical needs caused substantial injuries to Plaintiff.

Defendants cite *Orr v. Shicker*, 2020 WL 1329659, *9 (7th Cir. Mar. 23, 2020), to the effect that providing DAA treatment only for inmates with a fibrosis score of F2 or higher and APRI score of 0.7, while monitoring patients with lower scores did not put inmates at risk of "irreparable harm." But putting inmates at risk of "irreparable harm" is not the standard for deliberate indifference.

Mr. Horn wasn't newly identified as having HCV after the Court's ruling. That was just when he was given a FibroSure and staged as an F4. Dr. Figueroa's argument ignores his failure to treat Plaintiff between the time Centurion became FDC's contractor and when the Court issued the injunction. Dr. Figueroa can't hide behind his alleged compliance with the injunction as a reason for why he failed to stage, evaluate, and treat Mr. Horn sooner. That was the purpose of the injunction. Dr. Figueroa was doing nothing more than monitoring and adding those inmates to a running list of known HCV inmates with no intention to treat them. Just because

Dr. Figueroa started staging and treating pursuant to the injunction doesn't mean the slate was wiped clean of his failure to do so sooner. After all, the injunction was issued because the court found as a matter of fact that "without a court-ordered injunction," inmates are unlikely to be treated in a "constitutionally appropriate manner." 290 F.Supp.3d at 1303. It wasn't out of the kindness that Dr. Figueroa treated Mr. Horn, or because of his dedication to the Hippocratic oath, it was because of this Court's Order conveyed to him through Centurion by FDC.

## D. Plaintiff Suffered an Increased Physical Injury Due to Delay in Care

Defendants argue that Mr. Horn bears the burden to prove that a delay in treatment caused him to suffer an "increased physical injury*." Goebert v. Lee County*, 510 F.3d 1312, 1327 (Fla. 11th Cir., 2007); *accord Taylor v. Adams*, 221 F.3d 1254, 1259-60 (Fla. 11th Cir. 2000) (prisoner must show that delay seriously exacerbates the medical problem). They argue that Mr. Horn cannot meet his burden because there is no causal connection between Dr. Figueroa's actions and any increased physical injury to Mr. Horn.

But Defendants take an impermissibly narrow view of what constitutes injury. Their experts say plaintiff's liver is not cirrhotic. Plaintiff's expert believes it probably is. Defendants had a chance to further test or biopsy the liver and did not. That's where the matter stands. But that is not the only injury. In *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999), the court pointed out that prison officials

can violate the Eighth Amendment by failure to treat an inmate's pain. *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990). Even if an inmate is eventually provided treatments that "eliminated pain and suffering at least temporarily," the prison officials' actions in delaying the aforementioned treatments constitutes deliberate indifference. *Id* at 1257, *citing Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir.1988). The failure to treat pain. The failure to properly and consistently treat and dress wounds. The failure to correct misinformation that cause the cancellation of an early surgery opportunity. All these things constitute harm and there is evidence for a jury to construe.

In *Brown v. Hughes*, 894 F.2d 1533, (11th Cir. 1990), while the length of time a person suffers pain can be one factor in determining a constitutional injury, it is not necessarily the only one. The court recognized that "pain, as with an electric cattle prod, does not become unimportant and unactionable under the Eighth Amendment simply because the pain produced is only momentary." *Id*. at 1538. In the case of a painful, serious injury, a delay resulting from deliberate indifference, no matter how brief, would permit liability as much as if they had inflicted the pain themselves. *Id*. Even an intentional delay of a few hours in failing to provide care for a serious and painful condition is sufficient to state a constitutional claim." *Id*.

When Dr. Figueroa permitted Plaintiff's adjustable hospital bed to be taken away, his air mattress not to be replaced, that created intolerable pain each time his

disconnected upper right thigh shifted while he tried to sleep. Under these conditions, Mr. Horn could only sleep 2-3 hours a night. He lost muscle mass and without an air mattress, his bones pressed against his skin. He was only given Ibuprofen, 200 gr., for pain.  (Exh. 3, Horn Affidavit at ¶2).

Dr. Figueroa also took away the special Iodoform gauze wound packing and replaced it with ineffective un-treated gauze. The Centurion medical department was filthy. Plaintiff wore a PICC line for three years for his antibiotics but medical staff would rarely flush it and didn't use the sterile pads at the insertion site. When they finally did flush it, it had red-brown sediment coming out. Plaintiff suddenly felt very cold and felt he was going septic. (Id. at ¶3).

Stress, pain, and lack of sleep, added to the severe viral infection combined to undermine Horn's resistance to the bacterial infection that delayed his hip operation. But even after the infection had cleared, Dr. Figueroa failed to correct the misapprehension by Dr. Steel that Mr. Horn had an active infection and a "frozen hip joint" (clearly impossible since Mr. Horn had no hip joint) that caused Dr. Steel to cancel the new hip replacement surgery date. Dr. Figueroa permitted security staff to abuse Mr. Horn, in one case, forcing him to get out of bed with his unattached leg and make his bed as if he were able inmate with normal mobility. (Exh. 3, Horn Affidavit at ¶4).

Plaintiff suffered tunneling "sinus" infections in the flesh of his right thigh which resulted from Dr. Figueroa's ineffective wound care and the filth[6] and stressful living conditions that Dr. Figueroa imposed and which created the circumstances which, in addition to the misinformation provided to Dr. Steel that resulted in the cancellation of a surgery opportunity, interfered with Mr. Horn's hip replacement. The additional factor of the untreated HCV also played a role in the delay of effective treatment. (Exh. 3, Horn Affidavit at ¶ 1).

### E. Centurion Had an Unconstitutional Policy or Custom

From May of 2016 until November of 2017, Centurion's policy was to substantially ignore the gathering fate of Florida prisoners with Hepatitis C and to abandon them to their graves. As Shakespeare wrote in Julius Caesar, "All pity choked with custom of fell deeds."

When the lawyers for the prisoners shined a light on their actions, Centurion and their physicians put on the ill-fitting garb of virtue and declared that they were always planning to get back to the business of healing but they were not.

Centurion has a nationwide custom and practice of failing to provide adequate medical care to inmates. In the Florida class action suit *Hoffer v. Inch*,

---

[6] The filth of the medical department at Suwannee CI and the failure of medical staff to regularly flush the PICC line that plaintiff had to wear because of his frequent courses of antibiotics, led to the sediment in the PICC line the medical staff later tried to blame on plaintiff as proof that he tried to introduce some kind of substance into the IV. (Exh. 3, Horn affidavit at 3).

case no. 4:17-cv-214, Plaintiffs alleged that Centurion did not provide appropriate treatment for HCV with Direct-Acting Antivirals due to the cost of said treatment. The Court found that Centurion was not treating enough inmates for HCV and that there were not enough practitioners "to screen, evaluate, and treat inmates in a timely fashion." As of the granting of preliminary injunctive relief, only 13 inmates with HCV had been treated with DAAs, including the three Plaintiffs in *Hoffer*. Centurion understaffing and failing to treat inmates contributed to significant harm to many inmates suffering from HCV.

A January 2020 audit of the Tennessee Department of Correction (TDOC) the Tennessee Comptroller of the Treasury found that "Centurion of Tennessee, LLC…[has] been unable to consistently meet contractually required medical and mental health staffing levels, increasing the risk that inmates will not receive needed services." Centurion also did not "prepare and maintain important medical and mental health documentation." Between October of 2017 and June of 2019, the TDOC assessed $2.1 million in liquidated damages against Centurion and Corizon, the vast majority of which remains unpaid. (Exh. 5 at 2-3).

In the Correctional Medical Authority (CMA) Physical and Mental Health Survey of Suwannee Correctional Institution from 2017, seven of fifteen records reviewed from chronic illness clinics had incomplete or missing baseline information, including history, physical examination, and baseline laboratory data.

In addition, vaccination records were missing, annual labs were not completed, abnormal labs were not addressed, diseases were not classified, orders were incomplete, orders were not implemented, phone rounds were not done, inmates were not evaluated in required time frames, discharge notes were not completed, diagnoses were not recorded, health records were not reviewed, consultation and specialty services were not completed in a timely manner. The Review of the Suwannee CI Main Unit found "inadequate or incomplete documentation…[that] could lead to disruptions of continuity of care or medical errors" as well as "several deficiencies related to clinical care." (Exh. 6, CMA Audit Suwannee at 7).

### F. The Preclusive Effect of Hoffer Does Not Apply to Defendants

Elsewhere, Plaintiff has argued that Centurion is precluded by collateral estoppel from relitigating the issue of its deliberate indifference, due to prior litigation and final determination of same in *Hoffer v. Inch*, No. 4:17cv214-MW/CAS (N.D. Fla.). Plaintiff argued that Centurion carried out FDC's unconstitutional policy of refusing to treat HCV inmates, which this Court ultimately found to be deliberately indifferent in *Hoffer*.

Defendants argue that "because the Court has already determined that the delay in providing DAA treatment to *Hoffer* class members was caused by FDC's lack of funding, *not by the practices of Centurion or the treatment decisions of individual medical providers like Dr. Figueroa*," (ECF 101 at 28, *emphasis added*)

19

that the preclusive effect of Hoffer must operate to absolve Centurion and Dr. Figueroa from any wrongdoing. However, a reading of this Court's Order in Hoffer *does not* justify the conclusion that this Court absolved the Defendants of any wrongdoing. This is another example of taking liberty with the record.

Issue preclusion, also known as collateral estoppel, prevents the re-litigation of issues that have already decided between the parties in a prior suit. *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1332 (11th Cir. 2010). Under Florida law, issue preclusion has two "essential elements," namely that the "parties and issues be identical" and that "the particular matter be fully litigated and determined in a contest [resulting in] a final decision of a court of competent jurisdiction." *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co*., 945 So. 2d 1216, 1235 (Fla. 2006). Florida courts have consistently enforced an "actually adjudicated" requirement, with issue preclusion not being granted as to issues which could, but may not, have been decided in a prior suit between parties. *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952). Indeed, in matters of issue preclusion, the "precise fact" or "every point and question" on the issue must have been decided. *Gordon v. Gordon*, 59 So. 2d 40, 45 (Fla. 1952). If this standard has not been met, then a viable issue still exists upon which litigation can be pursued until a determination on the issue has been made. *Id*. at 44-45. *Brown v. R.J. Reynolds Tobacco Co*., 611 F.3d 1324 (11th Cir. 2010)

### G. Plaintiff's Claims Are Not Barred by the Rule against Claim Splitting

Alternatively, Defendants argue that Horn's claims against Dr. Figueroa and Centurion are barred by the rule against claim splitting, which "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Vanover v. NCO Fin. Services, Inc*., 857 F. 3d 833, 841 (11th Cir. 2017) (noting that plaintiffs "may not file duplicative complaints in order to expand their legal rights"). However this doctrine does not apply here.

First of all, *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993), is not the only court, and the Eleventh is not the only circuit, to find a claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if a prisoner plaintiff is a member of a pending class action. Id. at 1031. Many courts in other circuits have held that class actions are "one of the recognized exceptions to the rule against claim-splitting." *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 431–32 (4th Cir. 2003); *accord Gooch v. Life Inv'rs Ins. Co. of Am*., 672 F.3d 402, 429 (6th Cir. 2012) (same); *Verde v. Stoneridge, Inc*., 137 F.Supp.3d 963, 974 (E.D. Tex. 2015) (noting that "other courts recognize an exception to the rule against claim splitting for class actions"). *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 413–14 (5th Cir. 2017).

The Tenth Circuit in *Katz v. Gerardi*, confronted the issue of "whether a plaintiff can split potential legal claims against a defendant by bringing them in two

different lawsuits" and held that "related claims must be brought in a single cause of action." 655 F.3d 1212, 1214 (10th Cir. 2011). The Tenth Circuit's test for claim-splitting "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id*.

Plaintiff submits that the state of the law in other circuits is substantially consistent with the Eleventh Circuit in *Fortner v. Thomas*. These issues were substantially reviewed and decided by this Court and Plaintiff believes that for the purposes of this case, the issues are at rest.

### H. Plaintiff Suffered a More than De Minimis Physical Injury as Required by the Physical Injury Rule of the Prison Litigation Reform Act

As previously noted, Defendants take an impermissibly narrow view of what constitutes injury. The effects of serious HCV untreated for years is only one injury. But that is not the only injury. The failure to treat pain. The failure to properly and consistently treat and dress wounds. The failure to correct misinformation that cause the cancellation of an early surgery opportunity. In *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999), the court pointed out that prison officials can violate the Eighth Amendment by failure to treat pain. *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990). Even if an inmate receives care that "eliminated pain and suffering at least temporarily," the prison officials' actions in delaying the aforementioned treatments constitutes deliberate indifference. *Id* at 1257, *citing Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir.1988). The failure to treat pain. The failure

to properly and consistently treat and dress wounds. The failure to correct misinformation that cause the cancellation of an early surgery opportunity. All these things constitute harm and there is evidence for a jury to construe.

In *Brown v. Hughes*, 894 F.2d 1533, (11th Cir. 1990), while the length of time a person suffers pain can be one factor in determining a constitutional injury, it is not necessarily the only one. The court recognized that "pain, as with an electric cattle prod, does not become unimportant and unactionable under the Eighth Amendment simply because the pain produced is only momentary." *Id*. at 1538. In the case of a painful, serious injury, a delay resulting from deliberate indifference, no matter how brief, would permit liability as much as if they had inflicted the pain themselves. *Id*. Even an intentional delay of a few hours in failing to provide care for a serious and painful condition is sufficient to state a constitutional claim." *Id*.

When Dr. Figueroa permitted Plaintiff's adjustable hospital bed to be taken away, his air mattress not to be replaced, that created intolerable pain each time his disconnected upper right thigh shifted while he tried to sleep. Under these conditions, Mr. Horn could only sleep 2-3 hours a night. He lost muscle mass and without an air mattress, his bones pressed against his skin. He was only given Ibuprofen, 200 gr., for pain.  (Exh. 3, Horn Affidavit at ¶2).

Dr. Figueroa also took away the special Iodoform gauze wound packing and replaced it with ineffective un-treated gauze. The Centurion medical department

was filthy. Plaintiff wore a PICC line for three years for his antibiotics but medical staff would rarely flush it and didn't use the sterile pads at the insertion site. When they finally did flush it, it had red-brown sediment coming out. Plaintiff suddenly felt very cold and felt he was going septic. (Horn Affidavit at ¶3).

Stress, pain, and lack of sleep, added to the severe viral infection combined to undermine his body's resistance to the bacterial infection that delayed Mr. Horn's hip operation. But even after the infection had cleared, Dr. Figueroa failed to correct the misapprehension by Dr. Steel that Mr. Horn had an active infection and a "frozen hip joint" (clearly impossible since Mr. Horn had no hip joint) that caused Dr. Steel to cancel the new hip replacement surgery date. Dr. Figueroa permitted security staff to abuse Mr. Horn, in one case, forcing him to get out of bed with his unattached leg and make his bed as if he were able inmate with normal mobility. (Exh. 3, Horn Affidavit at ¶4).

Plaintiff suffered tunneling "sinus" infections in the flesh of his right thigh which resulted from Dr. Figueroa's ineffective wound care and the filth[7] and stressful living conditions that Dr. Figueroa imposed created the circumstances which, in addition to the misinformation provided to Dr. Steel that resulted in the

---

[7] The filth of the medical department at Suwannee CI and the failure of medical staff to regularly flush the PICC line that plaintiff had to wear because of his frequent courses of antibiotics, led to the sediment in the PICC line the medical staff later tried to blame on plaintiff as proof that he tried to introduce some kind of substance into the IV. (Exh. 3, Horn affidavit at 3).

cancellation of a surgery opportunity, interfered with Mr. Horn's hip replacement. The additional factor of the untreated HCV also played a role in the delay of effective treatment. (Exh. 3, Horn Affidavit at 1).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff moves this Honorable Court to DENY the Defendants' Motion for Summary Judgment.

Respectfully submitted, _s/James V. Cook_____
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; (850) 561-0836 fax
cookjv@gmail.com

_Attorney for PLAINTIFF_

I CERTIFY pursuant to Local Rule 7.1(F) that the pertinent parts of this motion and memorandum contain not more than 6216 words.

I CERTIFY the foregoing was filed electronically on 4/22/20 and served on all counsel registered with the CM/ECF electronic mail system:

_s/James V. Cook_